MARTHA GILMORE v. D. C. and J. C. GILMORE.

*Wills—Evidence.*

Where the validity of a will was contested on the ground of undue influence and want of testamentary capacity, the caveators proved by a witness that the propounder (surviving wife of testator) was crying while sitting on the bed whereon her deceased husband was lying, and said that the caveators "did not treat her with any respect, and if the will stood, they would treat her like a dog," it was held error to exclude the testimony of the propounder in rebuttal, under the circumstances of this case.

Issue of *devisavit vel non* tried at Fall Term, 1881, of MOORE Superior Court, before *Graves, J.*

Verdict for defendants, judgment, appeal by plaintiff.

*Mr. John Manning,* for plaintiff.
*Messrs. Hinsdale & Devereux,* for defendants.

SMITH, C. J. The script being produced and offered for probate before the probate judge, as the will of J. J. Gilmore, by his surviving wife, Martha Gilmore, the executrix therein nominated, and a caveat entered by J. C. Gilmore and D. G. Gilmore, sons and heirs at law of the deceased, the cause was removed to the superior court, and there the following issue prepared and submitted to the jury :

"Is the paper writing, or any part thereof, and if so, what part, the last will and testament of J. J. Gilmore ?"

Upon the trial the formal execution of the instrument was proved by the subscribing witnesses, and not controverted by the caveators, who contested its validity upon these assigned grounds :

1. The exercise of undue influence over the deceased.

2. The practice of fraud in procuring the making of it.

3. The want of sufficient testamentary capacity in the deceased.

Upon the trial the caveators introduced and proved by one Rachel Gilmore, that on one occasion the witness saw the propounder crying and sitting on the bed whereon her deceased husband was lying, and heard her say, that "the boys (referring to the caveators) did not treat her with any respect, and if his (the deceased's) will stood they would treat her like a dog."

At the conclusion of the impeaching evidence, the court remarked that there was not such evidence on the questions of undue influence and fraud, as could be left to the jury. In rebuttal, the propounder proposed by her own testimony to prove conversations and communications between her husband and herself, and especially to *contradict and correct* the witness in her statement of what occurred, and what was said at the bedside of the deceased. The court, on ob-

jection of the caveators excluded the testimony as bearing upon the questions of fraud and undue influence, as it had been already ruled that none had been offered in their support, but declared that the evidence was competent to show *capacity*, and would be received for that purpose only. The propounder excepted to this ruling, for that, the testimony of the witness Rachel Gilmore, having been heard by the jury, that offered in disproof of her statements should also be heard by them.

This ruling proceeds upon the idea of a withdrawal from their consideration of the two first questions, and of all impeaching evidence adduced by the caveators to sustain either; and it thus became the duty of the court to confine the argument to the sole question of testamentary capacity, and the presentation and discussion of the testimony admitted and pertinent thereto ; or, if these limits were overstepped, to instruct the jury to inquire only as to whether the deceased had a disposing mind and memory, when he executed the script.

Without adverting to the harsh terms in which some of the propounder's witnesses and relations are spoken of, the caveators' counsel characterized the instrument as "a *put up job*," "a Dowd will," "a family job"—one Dowd being a subscribing witness and a brother of the propounder, who had been with the deceased during his sickness.

The attack upon another subscribing witness who testified to having drawn both scripts at the instance of his brother, the deceased, and to his sanity when they were made, was in terms not less vituperative and severe.

The course of the argument and the terms in which the script is spoken of, derive their force from the personal relations of the witnesses to the instrument, its executrix, and to the propounder, its principal beneficiary, and tend to produce the conviction that it was the result of their influence exerted over, or fraud practiced upon the deceased; and

it is impossible to tell what effect the uncontradicted evidence of the witness, Rachel Gilmore, may have had in guiding the jury to their verdict. It certainly gave countenance to the argument and tended in that direction. The propounder was not permitted to give her own version of the matter, and hence either the argument to show influence or fraud should have been arrested, or corrected afterwards by proper explanations in the charge of the jury. Neither seems to have been done, and the absence of the excluded evidence under such circumstances must have been prejudicial to the propounder's case. We are not at liberty to speculate upon the weight it might have with the jury; it is enough that it was pertinent to the question of undue influence, and the counsel were permitted to press upon the jury its exercise in bringing about the making of the script.

It is obvious that the propounder has not had a fair trial, and her case properly laid before the jury.

If it had appeared that the judge instructed them wholly to disregard the argument based upon the evidence of fraud and fraudulent influence, and decide simply the question of testamentary capacity, the ground for a new trial would have been removed, for our theory of judicial practice supposes the eradication from the minds of the jury of the effect of testimony inadvertently admitted and afterwards ruled out, or corrected, and removes the legal objection thereto, however difficult it may be in fact to obliterate the impressions which its introduction may have produced. But this was not done so far as the record shows in the present trial.

There is error, and this will be certified to the end that the verdict be set aside and a *venire de novo* awarded, and it is so ordered.

Error.                                        *Venire de novo.*